UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

KIM LEE MILLBROOK,
    Plaintiff,

vs.                                                                                            06-4043

CORRECTIONAL OFFICER PRINE, et.al.,
    Defendants.

ORDER.

    This cause is before the court for consideration of the defendants' motion for summary judgement. [d/e 32]. The plaintiff filed a response to the motion for summary judgement, but also filed a motion to continue asking for appointment of counsel. The court denied the plaintiff's motion for appointment of counsel, but allowed the plaintiff additional time if he wished to file any supplemental response to the dispositive motion. *See May 18, 2007.* The deadline has passed and the plaintiff has not filed any further response.

I. BACKGROUND

    The plaintiff, Kim Lee Millbrook, brought this action pursuant to 42 U.S.C. §1983 claiming that his constitutional rights were violated at the Rock Island County Jail. The plaintiff has six surviving defendants including Correctional Officers Prine, Burgess, Perez, Lagaisse, Dyer, and Viren. *See* August 23, 2006 Merit Review Order. The plaintiff is alleging that the defendants violated his Eighth Amendment rights on May 21, 2006 when they used excessive force and were deliberately indifferent to his serious medical condition. The two Eighth Amendment claims are against the defendants in their individual capacities only.

    The plaintiff's complaint alleges that on May 21, 2006, Officer Prine noticed that the plaintiff had extra supplies in his cell. The officer entered the cell and ordered the plaintiff to drop to his knees and cuff up. The plaintiff says the defendants then proceeded to spray mace in his eyes and punched and kicked the plaintiff even though he was not offering any resistance. The plaintiff says he was then denied medical care for his injuries.

II. FACTS

    The plaintiff did not directly respond to the defendants statement of undisputed facts. Therefore the following facts are taken from the defendants' statement of undisputed fact, the defendants' exhibits and, where appropriate, the plaintiff's complaint and response to the dispositive motion.

    The plaintiff was at the Rock Island County Jail from January 10, 2006 to June 20, 2006. Jail Administrator Steve Dean says the plaintiff was issued a copy of the inmate rules, regulations, polices and procedures when he was processed into the jail. (Def. Memo, Dean Aff,

p. 1).

Defendant Prine says on May 21, 2006, he was assigned to work the third floor of the jail. Prine said he was assisting with inmate dinner at about 4:30 p.m. (Def. Memo, Prine Aff, p.1) The defendant says he would do a headcount while the trustees handed out dinner trays. Prine says he was also attempting to remove any extra jail issued items from individual cells. Prince says he could see that the plaintiff had an extra blanket and multiple rolls of toilet paper. Prine said the cell was unlocked and he entered to remove the items. *Id.*

Prine said he noticed that the plaintiff was standing in the back corner of his cell with a blanket wrapped around him. Prine said he removed 13 extra rolls of toilet paper, two extra blankets, four extra sheets, two extra towels and two extra wash towels. *Id.* The defendant says he also noticed two jump suits on the cell floor. He asked the plaintiff to remove the blanket he had wrapped around him so the officer could see if he was wearing a jumpsuit. The defendant claims that the plaintiff became upset and ordered the officer out of his cell. *Id.*

Prine says he started to pick up the extra jumpsuit, but the plaintiff removed the blanket from around him and came toward the officer "as if to attempt to put the blanket over my head." (Def. Memo, Prine Aff. p.2). The defendant radioed for assistance. "I was concerned that he may attempt to push me over the railing of the 2nd tier if Millbroook was to get out of his cell and physical confrontation were to ensue." *Id.*

Prine says he attempted to keep a distance from the plaintiff while giving him commands to turn around, get on his knees and place his hands behind his back. The defendant claims that the plaintiff refused all of his orders and continued to hold the blanket up in front of him. Defendant Prine says he moved his O.C. (Oleoresin capsicum) spray and sprayed one burst toward the plaintiff's face. However, the plaintiff was able to block the spray with the blanket. The defendant says he tried two more time before he made contact with the plaintiff's facial area. *Id.*

Prine says the "O.C. seemed to have little effect on Millbrook. Millbrook had dropped the blanket and now assumed a bladed offensive stance with both fists clinched." *Id.* Prine says the plaintiff continued to ignore his verbal commands and threatened to kill the officer.

Officers Viren, Dyer, Lagaisse, Warren and Burgess arrived on the scene. Officer Viren says he saw the plaintiff and Officer Prine in a struggle as Officer Prine was attempting to handcuff the plaintiff. Viren says he heard the plaintiff threaten to kill Defendant Prine and refuse verbal commands. (Def. Memo, Viren Aff, p. 2) Viren says he removed his taser, placed it on the right side of the plaintiff's back and informed him that if he did not comply with commands, Viren would use the taser. Defendant Viren says the plaintiff continued to struggle and he "deployed one, five second burst of the M26 taser to the right side of Millbrook's back." *Id.* The defendants claim the plaintiff was then escorted to a holding cell until he calmed down. (Def. Memo, Viren Aff, Prine Aff, Warren Aff.,Burgess Aff.)

The plaintiff has responded to the defendants' motion for summary judgement with an affidavit. The plaintiff alleges that the defendants punched and choked him while he was

handcuffed. The plaintiff also alleges that the taser and mace were used when he showed no resistance. The plaintiff says he was then taken to another cell where he was slammed head first into a wall and an elevator door. The plaintiff says the officers continued to choke him to the point that he almost passed out.

The plaintiff says he asked for medical care as soon as he was moved to the new cell, but his request was ignored. The plaintiff admits he was able to use the sink in his cell to wash out his eyes and wash off the mace.

As a result of the May 21, 2006 incident, the plaintiff was issued several citations for: 1) disobeying a correctional officer, 2) cursing at correctional staff, 3) having extra jail items, 4) interfering with a correctional officer's duties and 5) resisting or fighting with correctional staff.

Sargent Chris Young says he participated in the plaintiff's disciplinary hearing. He says the plaintiff admitted having extra items, admitted to disobeying various verbal commands and admitted using profanity. (Def. Memo, Young Aff, p. 1) As a result of these admissions, he was found guilty of each of these offenses.

The plaintiff denied approaching Defendant Prine in an aggressive manner or leading the officer to believe that he was in danger. Young says he reviewed a video of the hallway area and spoke to witnesses. The plaintiff was also found guilty of interfering with a correctional officers duties and resisting or fighting officers. The plaintiff received thirty days of disciplinary segregation and was released on the day he was released from the Rock Island County Jail to the Mercer County Sheriff's Department.

Dr. Larry Peterson says he was the jail physician during the relevant time periods of the plaintiff's complaint. (Def. Memo, Peterson Aff, p.1) The doctor says he examined the plaintiff on eight occasions during his stay. Dr. Peterson says he saw the plaintiff on May 22, 2006. The plaintiff said he was in an altercation with jail staff on May 21, 2006 and a taser was used on his back and mace was used in his face. The doctor says he examined the plaintiff and noted abrasions and burns on his back, a swollen wrist and abrasions on his right hand. The doctor noted no bruises, abrasions or swelling to the plaintiff's head.

> My impression as a result of that consultation was that Millbrook had taser burns on the back. He had contusions from cuff links and superficial trauma. I ordered Ibuprofen three times a day for 7 days and triple antibiotic ointment for taser burns. (Def. Memo, Peterson Aff, p.1-2)

Dr. Peterson says he again examined the plaintiff on May 30, 2006 and noted that the taser burns were healing without infection. The plaintiff complained that he had chest pain earlier, but was without pain during the visit. The plaintiff also complained of numbness in his thumb and the doctor believed it was "possible neuropathy secondary to hand cuffs." *Id.*, p.2. The doctor last saw the plaintiff on June 6, 2006 and no complaints were noted during this visit.

The defendants have also provided the digital recording taken during the incident at the cellblock, the third floor hallway and the prisoner elevator. The recording of the cellblock is at a

very wide angle and does not reveal much information about the altercation in the cell. The officer does enter the cell on the second level and exits with something in his hands that he puts on the floor. It also appears that the plaintiff is initially standing in the corner of his cell with a blanket around him. The officer reenters the cell and appears to back out into the doorway on one occasion before several officers are seen running to the cell. The entire encounter is brief. Several officers enter the cell and after a few minutes exit with the plaintiff. He is lead down the stairs without incident, but several officers are holding onto the plaintiff. The recording shows the plaintiff is a large, tall man.

The next camera shows the plaintiff being escorted down the hall. Several officers have a hold of the plaintiff and are moving him briskly down the hallway. The final camera shows the officers holding onto the plaintiff and forcibly pushing him to the back wall of the elevator. There are 8 or 9 officers on the elevator with the plaintiff. They hold him pinned to the wall while the elevator moves, and when it stops, they pull him from the elevator. There are no visible injuries in the plaintiff's brief appearance in the recording.

In his response to the dispositive motion, the plaintiff says he was repeatedly chocked by the officers and that he was "slammed into elevator door head first." (Plain. Resp. p. 2) The plaintiff also says his head was slammed into the side of the elevator and Officer Prine began choking him. The plaintiff further states that the beating continued when he was taken off the elevator.

The plaintiff says he was transferred from the Rock Island County Jail to the Mercer County Jail and then to the Metropolitan Correctional Center in Chicago, Illinois where he saw medical staff for headaches and chest pains.

## II. LEGAL STANDARD

The entry of summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56c. A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the nonmoving party. *Id.*

A party moving for summary judgment initially has the burden of showing the absence of any genuine dispute of material fact based on the evidence. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 153 (1970); *Schroeder v. Barth, Inc.,* 969 F.2d 421, 423 (7th Cir. 1992). A nonmoving party cannot rest on its pleadings, but must demonstrate that there is admissible evidence that will support its position. *Tolle v. Carroll Touch, Inc.,* 23 F.3d 174, 178 (7th Cir. 1994). The evidence and all reasonable inferences drawn therefrom are viewed in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255. Nonetheless, "(s)ummary judgement is not a discretionary remedy. If the plaintiff lacks enough evidence, summary judgement must be granted." *Jones v. Johnson*, 26 F.3d 727, 728 (7th Cir. 1994).

## IV. ANALYSIS

The defendants argue that the plaintiff has failed to establish that they used excessive force in violation of the constitution. The Eighth Amendment prohibits "unnecessary and wanton infliction of pain." *See Hudson v. McMillian*, 503 U.S. 1, 5 (1992); *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976). The central question in an excessive force claim is "'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson*, 503 U.S. at 6, *quoting Whitley v. Albers*, 475 U.S. 312, 320-21(1986)). "In making that determination, several factors are relevant, including the need for the application of the force, the amount of force applied, the threat an officer reasonably perceived, the effort made to temper the severity of the force used, and the extent of the injury that force caused to an inmate."*Fillmore v. Page*, 358 F. 3d 496, 504 (7th Cir. 2004). "[W]hile significant injury is not required, a claim ordinarily cannot be predicated upon a de minimis use of force." *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000) In addition, the absence of a serious injury tends to support that only de minimis force was used. *Outlaw v. Newkirk*, 259 F.3d at 839 (7th Cir. 2001).

The court agrees that the plaintiff has failed to demonstrate that the defendants used excessive force against the plaintiff. The plaintiff claims he did not resist officers in any way. However, during the disciplinary hearing, the plaintiff admitted that he had extra supplies in his cell, admitted that he did not follow various verbal commands and admitted he used profanity toward the officer. (Def. Memo, Young Aff, p. 1) In addition, the plaintiff does not dispute that the digital video recording is accurate. While the entire incident was not recorded and the viewer cannot see exactly what happened in the cell, it is clear the entire incident was extremely short. The contacts between staff and the plaintiff that are visible in the recording do not show any more force than was necessary to remove the plaintiff from his cell and escort him down a hallway and onto the elevator. Despite the plaintiff's allegations, his head is not slammed into the elevator door and no officer chokes the plaintiff. Perhaps more importantly, the plaintiff has failed to demonstrate that he had any significant injuries as a result of the encounter. The plaintiff was examined by a doctor the day after the alleged assault and the doctor did not observe any injuries consistent with the plaintiff's claims that he was beaten. The plaintiff also alleges he saw other medical personnel, but has failed to provide any evidence from these individuals. No reasonable jury could determine that the plaintiff had sustained his burden of proof on the use of excessive force. The motion for summary judgement on this claim is granted.

B.   MEDICAL CARE

The defendants next argue that the plaintiff has failed to show that they were deliberately indifferent to his serious medical needs. The plaintiff must pass both an objective and a subjective test in order to establish that the lack of appropriate medical care violated the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *Wilson v. Seiter,* 501 U.S. 294, 297 (1991). The plaintiff must first demonstrate that the alleged deprivation was sufficiently serious. *Id*. The plaintiff must also show that the defendants acted with deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "[A] finding of deliberate indifference requires evidence that the official was aware of the risk and consciously disregarded it nonetheless." *Mathis v. Fairman*, 120 F.3d 88, 91 (7th Cir. 1997)(citing *Farmer* at 840-42). Inadequate medical treatment due to negligence or even gross negligence does not support an Eighth

Amendment violation. *Shockley v Jones*, 823 F.3d 1068, 1072 (7th Cir. 1987).  In addition, inmates are not entitled to a specific type of treatment, or even the best care, only reasonable measures to prevent a substantial risk of serious harm. *Forbes v. Edgar,* 112 F.3d, 262, 267 (7th Cir. 1997).

The plaintiff admits he was able to wash the mace out of his eyes after the encounter with the defendants, and was examined by a doctor the next day.   The most the plaintiff could claim is his medical care was delayed.   "[P]roof of deliberate indifference may be found where a prison official intentionally denies or delays access to medical care or intentionally interferes with the treatment once prescribed." *Jones v. Natesha* ,151 F.Supp.2d 938, 945 (N.D. Ill.  2001) *citing* Ford, 2001 WL 456427 at 6.   A delay in scheduling an appointment for medical treatment may constitute deliberate indifference. *Jones v. Simek*, 193 F.3d 485, 490-491 (7th Cir. 1999)  However, "an inmate who complains that delay in medical treatment rose to constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Langston v Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996).

The plaintiff has failed to meet this burden.   The doctor who examined the plaintiff the day after the alleged assault noted the taser burn and provided medication.  The doctor later examined the burn and found that it was healing appropriately.   The only other injuries noted by the doctor during the initial examination were "superficial." (Def. Memo, Peterson Aff, p.1-2)  The plaintiff has presented no evidence to dispute this claim and no evidence that the one day delay in treatment had a detrimental effect on his condition.  Again, no reasonable jury could find that the plaintiff had sustained his burden of proof on the claim of deliberate indifference to a serious medical condition.   The motion for summary judgement on this claim is granted.

**IT IS THEREFORE ORDERED that:**

**1) The defendants' motion for summary judgment (d/e 32) is allowed.  The clerk of the court is directed to enter judgment in favor of the defendants and against the plaintiff pursuant to Fed. R. Civ. P. 56.  The case is terminated.  The parties are to bear their own costs.**

**2) If the plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4).  A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal.  *See* Fed. R. App. P. 24(a)(1)©.  If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal.  Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate another strike under 28 U.S.C. 1915(g).**

**3) The agency having custody of the plaintiff is directed to remit the docketing fee of $350.00 from the plaintiff's prison trust fund account if such funds are available.  If the plaintiff does not have $350.00 in his trust fund account, the agency must send 20 percent of the current balance, or the average balance during the past six**

**months, whichever amount is higher; thereafter, the agency shall begin forwarding monthly payments from the plaintiff's trust fund account to the clerk of court each time the plaintiff's account exceeds $10.00 until the statutory fee of $350.00 is paid in its entirety. The filing fee collected shall not exceed the statutory filing fee of $350.00.**

**4) The plaintiff is responsible for ensuring the $350.00 filing fee is paid to the clerk of the court even though his case has been dismissed. Release from incarceration does not relieve the plaintiff of his obligation to pay the filing fee in full.**

**5) The plaintiff must notify the clerk of the court of a change of address and phone number within seven days of such change.**

**6) The clerk is directed to mail a copy of this order to the plaintiff's place of confinement, to the attention of the Trust Fund Office.**

ENTERED this 28th day of June, 2007.

                               **s\Harold A. Baker**
                            _____
                               HAROLD A. BAKER
                            UNITED STATES DISTRICT JUDGE